1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   ALBERT ESTRADA CAMPOS, JR.,          No.  1:16-cv-00269-DAD-JLT (HC)

12              Petitioner,              **FINDINGS AND RECOMMENDATION
                                         TO DENY PETITION FOR WRIT OF**
13        v.                             **HABEAS CORPUS**

14   STUART SHERMAN,                      **[TWENTY-ONE DAY OBJECTION
                                         DEADLINE]**
15              Respondent.

16

17          Petitioner is currently serving an indeterminate sentence of 23 years to life for his

18   conviction of attempted murder and assault with a deadly weapon.  Petitioner has filed this habeas

19   action claiming: 1) Defense counsel rendered ineffective assistance by failing to request pinpoint

20   jury instructions on provocation; and 2) The trial court erred by failing to properly award prior

21   custody credits against his sentence. As discussed below, the Court finds the claims to be without

22   merit and recommends the petition be **DENIED.**

23   **I.        PROCEDURAL HISTORY**

24          Petitioner was convicted in the Tulare County Superior Court on August 2, 2013, of

25   attempted murder (Cal. Penal Code §§ 187(a)/664) and assault with a deadly weapon (Cal. Penal

26   Code § 245(a)(1).  People v. Campos, No. F068536, 2015 WL 4641929, at *1 (Cal. Ct. App.

27   Aug. 5, 2015).  The jury also found true allegations that he acted with premeditation and

28   deliberation, personally used a deadly weapon, and personally inflicted great bodily injury.  Id.  In

1

addition, he admitted special allegations that he had sustained a prior serious felony conviction within the meaning of California's three strikes law (Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)), and that he had been convicted of three prior serious felony offenses resulting in prison terms (Cal. Penal Code § 667.5(b)). Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed the judgment on August 5, 2015. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was summarily denied on October 14, 2015. Id.

On February 26, 2016, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. No. 1). Respondent filed an answer on May 27, 2016. (Doc. No. 18). Petitioner did not file a traverse.

## II.     FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

> Appellant is deaf and he communicates primarily through sign language, although he attempts verbal communication at times. On June 2, 2012, he was in the process of moving out of a house which his father owned in Visalia, California. Appellant and his ex-girlfriend, Genevieve Perez, had recently ended their relationship and Perez was also moving to a new residence with their children. Appellant's sister and her fiancé, along with a common friend, were there moving into the residence that appellant and Perez were vacating. Appellant's father, Albert Campos, Sr., and his wife, Dina Campos, were there to help. Appellant appeared upset that day.
>
> During the moving process, Perez parked her vehicle in front of the next door neighbor's driveway. When she was preparing to leave Perez apologized to the neighbor, Jose Rodriguez, who indicated it was not a problem. Appellant walked over and asked Perez why she was talking to Rodriguez. Perez believed appellant thought she was flirting.
>
> Appellant approached Rodriguez and began yelling, asking why Rodriguez was talking to Perez. Rodriguez, who understands and can communicate a little in sign language, indicated he had not done anything. Both appellant and Rodriguez began to argue near Rodriguez's house, and they both appeared upset or angry. Both men used sign language to communicate, although people also heard appellant making loud sounds. Both men acted as if they might hit the other. Witnesses estimated they argued from either a few minutes or up to 10 minutes before they separated and Rodriguez walked into his house.

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

Appellant walked into his residence where Dina saw him appearing very angry. She observed appellant go into the back of the house and he reappeared holding a knife that was approximately 10 inches long. Appellant went back outside.

Appellant sat in his truck across the street. At some point Rodriguez came out of his house and walked onto the property belonging to appellant's father. Rodriguez walked over to Campos, Sr., and extended his hand, but Campos, Sr., refused to take Rodriguez's hand over a concern it would look disrespectful towards his son following their argument. Campos, Sr., backed away.

Holding a metal pipe, appellant approached Rodriguez and struck him with the metal pipe around Rodriguez's ribs or hip. Campos, Sr., grabbed the metal pipe, and appellant and Rodriguez began to fistfight. Each exchanged blows and appellant fell to the ground with Rodriguez on top of him.

While on the ground, appellant produced a knife and made upward thrusting motions. Rodriguez sustained multiple stab wounds to his face, midsection, and thigh. He was bleeding.

Dina summoned law enforcement. Rodriguez attempted to drive himself to a hospital, but on the way he ran a red light and collided with a police officer who was responding to Dina's 911 call. Rodriguez was found unconscious and bleeding profusely from his face and head. He was hospitalized and underwent multiple surgeries.

A short time after Rodriguez drove away, law enforcement located appellant at the same residence and arrested him without incident. Appellant was holding a fixed blade knife, which law enforcement collected. Appellant told the arresting officer he acted in self–defense.

Law enforcement interviewed appellant, which was videotaped with audio and played for the jury. In the interview, appellant indicated he thought Rodriguez was "making eyes" at Perez and tried to hit on her. While sitting in his truck, he saw Rodriguez approach his father and appellant had previously warned Rodriguez not to come onto his property. Appellant indicated he hit Rodriguez to protect his father and he thought Rodriguez might have had a screwdriver with him. Appellant admitted he never saw Rodriguez holding or using a screwdriver during their fight. He stated Rodriguez is much bigger than he is and he acted in self-defense.

Appellant did not testify or introduce any evidence on his own behalf.

Campos, 2015 WL 4641929, at *1–2.

## III.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as

3

1  guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare

2  County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. §

3  2254(a); 28 U.S.C.§ 2241(d).

4  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

5  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

6  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases

7  filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA

8  and is therefore governed by its provisions.

9      B.      Legal Standard of Review

10  A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

11  the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision

12  that was contrary to, or involved an unreasonable application of, clearly established Federal law,

13  as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was

14  based on an unreasonable determination of the facts in light of the evidence presented in the State

15  court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);

16  Williams, 529 U.S. at 412-413.

17  A state court decision is "contrary to" clearly established federal law "if it applies a rule

18  that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set

19  of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a

20  different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-

21  406).

22  In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

23  an "unreasonable application" of federal law is an objective test that turns on "whether it is

24  possible that fairminded jurists could disagree" that the state court decision meets the standards

25  set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable

26  application of federal law is different from an incorrect application of federal law.'"  Cullen v.

27  Pinholster, 563 U.S. 170, 203 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from

28  a federal court "must show that the state court's ruling on the claim being presented in federal

4

1  court was so lacking in justification that there was an error well understood and comprehended in

2  existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

3      The second prong pertains to state court decisions based on factual findings. Davis v.

4  Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

5  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

6  petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

7  facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539

8  U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's

9  factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable

10  among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-

11  1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

12      To determine whether habeas relief is available under § 2254(d), the federal court looks to

13  the last reasoned state court decision as the basis of the state court's decision. See Ylst v.

14  Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

15  2004). "[A]lthough we independently review the record, we still defer to the state court's

16  ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

17      The prejudicial impact of any constitutional error is assessed by asking whether the error

18  had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

19  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

20  (holding that the Brecht standard applies whether or not the state court recognized the error and

21  reviewed it for harmlessness).

22      C.      Review of Claims

23      The instant petition presents the following grounds for relief: 1) Defense counsel rendered

24  ineffective assistance by failing to request pinpoint jury instructions on provocation; and 2) The

25  trial court erred by failing to properly award prior custody credits against his sentence.

26      1.      Ineffective Assistance of Counsel

27      Petitioner claims defense counsel failed to request pinpoint jury instructions on

28  provocation. He alleges the evidence clearly showed that he was upset and acted in the heat of

passion such that the jury instructions were warranted. He argues that had counsel requested the instructions, the jury would have found him guilty of only attempted murder that was not committed with deliberation and premeditation. Petitioner presented this claim on direct review. The Fifth DCA rejected the claim, as follows:

### I.     Appellant was not Denied the Effective Assistance of Counsel.

Appellant contends his trial counsel rendered constitutionally ineffective assistance when he failed to request a jury instruction, such as CALJIC No. 8.73, that provocation should be considered in determining whether the attempted murder offense was committed with deliberation and premeditation. He asserts his trial counsel could not have had any reasonable tactical reason for this failure. He argues he was prejudiced and should be resentenced on count 1.

### A.  Standard of review.

"To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).) When such a claim is made on direct appeal, unless there can be no satisfactory explanation, the conviction must be affirmed if the record does not show the reason for counsel's challenged actions or omissions. (*Ibid.*) Even when deficient performance is present, the defendant must establish it is reasonably probable the outcome would have been different but for counsel's unprofessional errors. (*Ibid.*) """'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"" [Citations.]" (*Ibid.*)

### B.  Background.

Regarding premeditation and deliberation, the trial court instructed the jurors with CALCRIM No. 601, informing them, in part, that "[a] decision to kill made rashly, impulsively, or without careful consideration of the choice and its consequences is not deliberate or premeditated." The trial court also instructed the jury on attempted voluntary manslaughter using CALCRIM No. 603, noting that the attempted murder should be reduced if appellant acted under a "heat of passion" including "any violent or intense emotion that causes a person to act without due deliberation and reflection." The jury also received instruction under CALCRIM No. 604 regarding the imperfect self–defense doctrine.

During closing arguments, appellant's trial counsel asserted that appellant never intended to kill Rodriguez and this was not an attempted murder case. Instead, appellant acted either under a heat of passion or under the doctrine of imperfect self–defense, and defense counsel asked the jury to read those instructions. The jury was urged to find that appellant believed his father was being threatened or attacked when Rodriguez came over after the initial confrontation. It was also argued that appellant used reasonable force once he was on the ground and Rodriguez was on top of him. Defense counsel argued that the jury should return a "not guilty verdict" on count 1.

### C.  Analysis.

CALJIC No. 8.73 states: "If the evidence establishes that there was provocation

which played a part in inducing an unlawful killing of a human being, but the provocation was not sufficient to reduce the homicide to manslaughter, you should consider the provocation for the bearing it may have on whether the defendant killed with or without deliberation and premeditation."

Similarly, CALCRIM No. 522 states: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.] [¶] [Provocation does not apply to a prosecution under a theory of felony murder.]"

### 1. The record discloses a satisfactory explanation for defense counsel's actions.

CALJIC No. 8.73 and CALCRIM No. 522 are pinpoint instructions which a trial court is not required to provide to the jury absent a defense request. (*People v. Rogers* (2006) 39 Cal.4th 826, 878–880.) It is undisputed that appellant's trial counsel did not make a request for one of these jury instructions. However, the defense theory was that appellant never intended to kill Rodriguez, and appellant acted either under a heat of passion or under the doctrine of imperfect self–defense.

This record demonstrates that defense counsel appeared to have had a sound tactical strategy for not requesting a provocation jury instruction regarding premeditation and deliberation. The defense sought to eliminate an attempted murder verdict. Defense counsel could have recognized that advocating a provocation defense, which includes an implied admission that appellant formed an intent to kill, would disadvantage appellant. Despite appellant's argument to the contrary, a jury instruction regarding provocation would have been inconsistent with the defense theory that appellant never formed an intent to kill. In light of defense counsel's closing arguments, appellant cannot show there is no satisfactory explanation for his counsel's actions or omissions. Thus, appellant cannot maintain a claim of ineffective assistance of counsel. (*Anderson, supra*, 25 Cal.4th at p. 569.)

### 2. **Appellant cannot establish prejudice**.

Even if appellant could establish deficient performance, he cannot establish that his counsel's actions or omissions caused the required prejudice. An instruction under either CALJIC No. 8.73 or CALCRIM No. 522 would have informed the jury it could consider provocation in deciding whether first or second degree attempted murder occurred.

However, with CALCRIM No. 601, the jury was instructed to consider appellant's mental state and whether he acted rashly, impulsively or without careful consideration in deciding if premeditation and deliberation occurred or not. Further, the jury was instructed with CALCRIM No. 603 regarding attempted voluntary manslaughter based on heat of passion, including "any violent or intense emotion that causes a person to act without due deliberation and reflection."

Given the evidence, arguments and jury instructions, the jury was informed it should consider appellant's mental and emotional circumstances when determining

whether attempted murder occurred, and whether it was done with premeditation or deliberation. It is not reasonably probable the jury would have found appellant guilty of second-degree attempted murder instead of first degree had defense counsel requested the provocation instruction. Accordingly, appellant's ineffective assistance claim fails for a lack of prejudice. (*Anderson, supra*, 25 Cal.4th at p. 569.)

Campos, 2015 WL 4641929, at *2–4.

     a.  Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard

1    is "doubly deferential" because it requires that it be shown not only that the state court

2    determination was erroneous, but also that it was objectively unreasonable. Yarborough v.

3    Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a

4    state court has even more latitude to reasonably determine that a defendant has not satisfied that

5    standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule

6    application was unreasonable requires considering the rule's specificity. The more general the

7    rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

8              b.   Analysis

9         Petitioner fails to demonstrate how counsel's performance was deficient. As noted by the

10   appellate court, the defense theory in the case was that Petitioner did not form the intent to kill

11   and therefore did not commit attempted murder. Defense counsel argued that Petitioner acted

12   either under a heat of passion or under the doctrine of imperfect self-defense. The instructions

13   that were provided addressed this theory and defense counsel asked the jury to consider those

14   instructions. The pinpoint instructions that Petitioner now claims should have been requested

15   would have undermined the defense theory insofar as they would have required the jury to find

16   implicitly that Petitioner formed the intent to kill. Petitioner fails to address how the state court

17   finding on this issue was unreasonable, and certainly fails to demonstrate that no fairminded jurist

18   would agree with the state court's rejection of the claim. Harrington, 562 U.S. at 101.

19        In addition, Petitioner fails to show prejudice. As discussed by the appellate court, the

20   jury was already instructed with CALCRIM No. 601 that it must consider Petitioner's mental

21   state and whether he acted rashly, impulsively, or without careful consideration in deciding

22   whether he acted with premeditation and deliberation. The jury was further instructed with

23   CALCRIM No. 603 on attempted voluntary manslaughter based on heat of passion. Therefore,

24   the jury was instructed that it must consider Petitioner's mental and emotional state in deciding

25   whether he acted with premeditation and deliberation. Petitioner thus fails to demonstrate that the

26   result would have been different had defense counsel requested the pinpoint instructions on

27   provocation.

28        Accordingly, Petitioner fails to demonstrate that the state court rejection of his claim was

contrary to or an unreasonable application of the <u>Strickland</u> standard.  The claim should be denied.

2.    <u>Sentencing Error</u>

Petitioner next claims that the trial court erred by failing to grant custody credits against his sentence for time he served consecutively on a separate conviction for possession of methamphetamine.  Respondent correctly argues that the claim is unexhausted and fails to present a federal claim.  While Petitioner raised it on direct appeal to the Fifth DCA, he failed to do so in his petition for review to the California Supreme Court.  (LD 15.)  The claim is unexhausted.  However, it is also without merit because it fails to state a cognizable federal claim.  28 U.S.C. § 2254(b).

The basic scope of habeas corpus is prescribed by statute.  Title 28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(emphasis added).  <u>See also</u> Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court.  The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973).

Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2).

It is well-settled that federal habeas relief is not available to state prisoners challenging state law.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); <u>Langford v. Day</u>, 110 F.3d 1380, 1389

(9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).

Petitioner challenges the state court's application of state sentencing laws. Such a claim does not give rise to a federal question cognizable on federal habeas review. Lewis v. Jeffers, 497 U.S. 764 (1990); Sturm v. California Youth Authority, 395 F.2d 446, 448 (9th Cir. 1967) ("a state court's interpretation of its [sentencing] statute does not raise a federal question"). In order to state a claim for relief, Petitioner must demonstrate that the state committed sentencing error that was "so arbitrary or capricious as to constitute an independent due process" violation. Richmond v. Lewis, 506 U.S. 40 (1992). Petitioner has failed to demonstrate such a violation here, because on its face, the petition shows no sentencing error or arbitrariness. Under California law, presentence credit may not be awarded more than once. People v. Cooksey, 95 Cal. App.4th 1407, 1415 (2002). Petitioner received a consecutive sentence stemming from multiple unrelated charges. He is not eligible for additional credits against his sentence because he has already been awarded those credits once before. The Court is bound by the state court's application of its sentencing laws. The claim should be rejected.

**IV.     RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **April 18, 2017**                                    **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE